IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RWG VENTURES, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15cv0662 (AJT/MSN) |
| | ) | |
| SUNOCO, INC. (R&M), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This case involves a dispute over the application of the Virginia Petroleum Products Franchise Act ("VPPFA"), Va. Code Ann. § 59.1-21.8 *et seq.* The parties have filed cross-motions for summary judgment. [Doc. Nos. 34, 35]. On November 13, 2015, the Court held a hearing on the motions and took the matter under advisement. For the reasons discussed below, defendants' Motion for Summary Judgment [Doc. No. 35] is GRANTED and plaintiffs' Motion for Summary Judgment [Doc. No. 34] is DENIED.

## I. BACKGROUND

Unless indicated otherwise, the following facts are undisputed. A 2014 amendment to the VPPFA, referred to as the Right of First Refusal Amendment or "ROFR Amendment," prohibits franchisors of certain gas stations from engaging in any sale, transfer, or assignment of their interest in the property "unless the franchisor has first either made a bona fide offer to sell, transfer, or assign to the dealer the franchisor's interest in the premises . . . or, if applicable, offered to the dealer a right of first refusal." Va. Code Ann. § 59.1-21.15:2.[1]

---

[1] The ROFR Amendment applies only to gas station franchisees located within the geographic boundaries of Planning District 8, which encompasses four counties (Arlington, Fairfax, Loudoun, Prince William), five cities (Alexandria, Fairfax, Falls Church, Manassas, Manassas Park), and five towns (Dumfries, Herndon, Leesburg, Purcellville, Vienna).

Plaintiffs are franchisees that operate "Sunoco" branded fuel stations and convenience stores in Fairfax County and Alexandria City. As franchisees, plaintiffs are authorized to engage in the retail sale of motor fuel under Sunoco's trademark. [Doc. No. 36 at 1]. Plaintiffs also lease or sublease their station premises from Sunoco, Inc. (R&M)—referred to under the VPPFA as "leased marketing premises."[2] Va. Code. Ann. § 59.1-21.10.

On May 22, 2015, plaintiffs filed a Complaint alleging that Sunoco, Inc. (R&M) violated the VPPFA when transferring these leased marketing premises to Sunoco, LLC without first complying with the ROFR Amendment. [Doc. No. 1, ¶ 34]. Based on these allegations, plaintiffs seek a declaratory judgment that defendant Sunoco, Inc. (R&M) violated the VPPFA, an injunction requiring defendants to make each plaintiff a bona fide offer to acquire their respective leased marketing premises, an award of liquidated damages under Virginia Code § 59.1-21.12(A), and attorney's fees.

Defendants argue they are exempt from the VPPFA, and specifically the ROFR Amendment, for three reasons:[3]

---

[2] Plaintiffs' Motion for Summary Judgment, as filed, did not request relief with respect to the two leased marketing premises owned by third-party landlords. [Doc. No. 36 at 2 n.2] ("This motion is directed only to the fee simple properties, and does not include the two ground lease properties at 6301 Leesburg Pike, Falls Church, VA 22044 and 8040 Rolling Road, Springfield, VA 22153."). On November 16, 2015, plaintiffs submitted additional briefing and leasing documents recently obtained by subpoena. [Doc. No. 45]. Defendants have filed a motion to strike these submissions for failure to comply with Local Rule 7(F). The Court has considered the merits of plaintiffs' claims with respect to these additional properties and its ruling extends to these interests as well as the fee simple properties at issue. In light of the Court's ruling that the ROFR Amendment does not apply to Sunoco, Inc. (R&M)'s transfer of its property interest, there is no need to consider the issues raised in the supplemental briefing and defendants' Motion to Strike Plaintiffs' Supplemental Filing [Doc. Nos. 46, 47] will be denied as moot.

[3] Defendants also argue the ROFR Amendment constitutes an unconstitutional taking of property in violation of the Fifth Amendment. On October 28, 2015, defendants filed a Notice of Constitutional Challenge of Statute [Doc. No. 40], which plaintiffs argue is untimely under Fed. R. Civ. P. 5.1(a)(1) and must be dismissed without prejudice. Given the disposition of this case, the Court will not rule on this constitutional challenge or its timeliness, and declines to certify the matter pursuant to 28 U.S.C. § 2403.

1. Sunoco, Inc. (R&M) is not a "franchisor" because neither it nor any of its "affiliates" refine crude oil to produce motor fuel, and therefore not subject to the ROFR Amendment.

2. Even if subject to the ROFR Amendment, Sunoco, Inc. (R&M)'s transfer of its interest in leased marketing premises to Sunoco, LLC, pursuant to an internal asset restructuring, does not trigger the ROFR Amendment since the transfer was not to "another person," as required by statute.

3. The relied upon transfer to Sunoco, LLC pre-dated the ROFR Amendment's effective date.

**II. STANDARD OF REVIEW**

Considering cross-motions for summary judgment does not require an alteration of the standard analysis under Federal Rule of Civil Procedure 56. The Court should consider each motion on its own merits and determine whether either party is entitled to judgment as a matter of law. *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Additionally, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* at 523 (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56(a), the party seeking summary judgment bears the initial burden of demonstrating the absence of any material factual dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once properly made and supported, the burden shifts to

3

the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. At that point, "the [Court]'s function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. All parties agree that this action is ripe for adjudication through the summary judgment procedure.

### III. ANALYSIS

This case revolves around three issues of statutory construction:

1. Whether Sunoco, Inc. (R&M) is a "franchisor" – which depends on whether Philadelphia Energy Solutions LLC ("PES"), an acknowledged "refiner" under the VPPFA, is considered an "affiliate" of Sunoco, Inc. (R&M).

2. Whether Sunoco, LLC is "another person" to which Sunoco, Inc. (R&M) transferred the leased marketing premises.

3. Whether the challenged transfers of property took place on the effective date of the Contribution Agreement between Sunoco, Inc. (R&M) and Sunoco, LLC, which predates the effective date of the ROFR Amendment; or whether these transfers took place on the date that individual Quitclaim deeds for the leased marketing premises were either executed or recorded.

The starting point for each of these issues is the statute itself and the context in which its terms are used. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 (4th Cir. 1999) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). In that connection, the Court must presume the legislature intended to give words their plain and ordinary meaning, unless confronted with a clear indication that some other permissible meaning applies or where literal construction would yield an absurd result. Only when ambiguity persists should the Court attempt to derive legislative intent beyond the text of the statute.

a. *Sunoco, Inc. (R&M) is "engaged" in refining; Philadelphia Energy Solutions LLC is an "affiliate" under the VPPFA; and Sunoco, Inc. (R&M) is a "refiner."*

The first issue is whether Sunoco, Inc. (R&M) is a "franchisor" under the VPPFA. A "franchisor" is "a refiner who authorizes or permits, under a franchise, a dealer to use a trademark in connection with the sale, consignment, or distribution of motor fuel." Va. Code

4

Ann. § 59.1-21.10. Here, there is no dispute that Sunoco, Inc. (R&M) "authorizes or permits, under a franchise, a dealer to use a trademark in connection with the sale, consignment, or distribution of motor fuel." The only issue is whether Sunoco, Inc. (R&M) meets the VPPFA's definition of a "refiner," which is defined as "any person engaged in the refining of crude oil to produce motor fuel and includes any affiliate of such person." Va. Code Ann. § 59.1-21.10.

Sunoco, Inc. (R&M) obtains the motor fuel it distributes to franchisees and dealers from PES, which actually refines the crude oil. [Doc. No. 36, Ex. O]. PES was initially formed as a joint venture between Sunoco, Inc.,[4] Carlyle U.S. Equity Opportunity Fund, L.P., and CEPF Coinvestment, L.P. on June 12, 2012. [Doc. No. 36 at 5–6]. Less than a month later, Sunoco, Inc. sold its final refinery assets to PES pursuant to a Refining Contribution Agreement. [Doc. No. 37, Ex. 1]. Sunoco, Inc. (R&M) currently owns a one-third equity interest in PES, controls the selection of two PES board members, and is one of PES' largest customers. [Doc. No. 37 at 7–8].[5]

The first issue is whether Sunoco, Inc. (R&M) is "engaged" in the refining of crude oil. "Engage" is understood to mean "[t]o employ or involve oneself; to take part in; to embark on." *Black's Law Dictionary* (10th ed. 2014). Here, PES was initially created as a joint venture by wholly owned Sunoco entities precisely for the purpose of refining crude oil for distribution to Sunoco's franchised dealers. Sunoco, Inc. (R&M) has a substantial, although not controlling, ownership interest in PES, coupled with representation on the PES Board and major involvement

---

[4] Sunoco, Inc. (R&M) is a wholly-owned subsidiary of Sunoco, Inc. [Doc. No. 36, Ex. D]. Sunoco, LLC is a wholly owned subsidiary of "ETP Retail Holdings, LLC" which is controlled by three Sunoco entities: La Grange Acquisition, L.P., Atlantic Refining & Marketing Corp., and Sunoco, Inc. (R&M).

[5] Initially, Sunoco, Inc. owned 49% of the equity interest in PES while Carlyle U.S. Equity Opportunity Fund, L.P. and CEPF Coinvestment, L.P. owned 51%. [Doc. No. 37, Ex. 1].

5

as a PES customer. Based on the foregoing, the Court concludes that Sunoco, Inc. (R&M) is

"engaged" in the refining of crude oil, even though it does not actually refine the crude oil itself.

The Court also concludes that PES is an "affiliate" of Sunoco, Inc. (R&M). The term

"affiliate" is undefined under the VPPFA or the General Provisions of the Virginia Code.[6] The

Court must therefore give that word its ordinary, contemporary, and common meaning within the

context and structure of the VPPFA. Webster's defines affiliate as "a company effectively

controlled by another *or* associated with others under common ownership *or* control." *Webster's*

*New International Dictionary* (3rd ed. 1993) (emphasis added). Similarly, the Oxford English

Dictionary defines the term as "a recognized auxiliary, as an affiliated organization, company,

etc." *Oxford English Dictionary* (2nd ed. 1991).

Defendants essentially argue that an "affiliate" should be limited to those entities

effectively under Sunoco, Inc. (R&M)'s operational control. [Doc. No. 37 at 5–7]. Based on

this definition, defendants argue that PES is not an "affiliate" since Sunoco, Inc. (R&M) is a

minority shareholder, with the ability to name only 2 out of 7 directors on the PES board.

In considering the meaning of "affiliate," the Court finds it significant that the legislature

choose not to adopt a statutory definition that requires "control." Principally for that reason, the

Court adopts a working definition that more closely aligns with the definitions referenced above.

There is no doubt that PES has a close corporate association with the Sunoco organization and is

an included entity in various consolidated regulatory and other public filings by the Sunoco

organization. [Doc. No. 36, Ex. L]. Based on the record, the Court concludes that PES is an

"affiliate" of Sunoco, Inc. (R&M) as a matter of law.

---

[6] Defendants do not contest that Sunoco, Inc. (R&M) is a "person" for purposes of the VPPFA
and ROFR Amendment. *See* Va. Code Ann. § 1-230 (defining "person" to include corporations,
joint ventures, partnerships, limited liability companies, and their instrumentalities).

For these reasons, the Court finds that Sunoco, Inc. (R&M) is a "refiner" and therefore a "franchisor" under the VPPFA.

b. *The transfer of Sunoco, Inc. (R&M)'s interest in the leased marketing premises to Sunoco, LLC was not a sale, transfer, or assignment to "another person"*

Having found Sunoco, Inc. (R&M) to be a "franchisor," the Court must now consider whether the transfers from Sunoco, Inc. (R&M) to Sunoco, LLC are transfers to "another person," under the ROFR Amendment.[7]

The VPPFA does not define "person" or "another person." However, "person" is defined under the General Provisions of the Virginia Code and that definition applies to the VPPFA.[8] As that definition reflects, a "person" is not necessarily limited to one legal entity, but rather can include more than one cognizable legal entity having a sufficiently close identity of interests, such as a partnership, joint venture, an association, a cooperative, or a covered entity's "instrumentality." Conversely, "another person" refers to a "person" whose interests, ownership or identity is sufficiently separate, distinct, or adverse. Here, Sunoco, Inc. (R&M) formed Sunoco, LLC on November 19, 2013 in order to receive certain assets which generate qualifying income for Sunoco, Inc. (R&M) and one of its affiliates. [Doc. No. 37, Ex. 11 ¶ 4].

---

[7] Virginia Code § 59.1-21.15:2.B provides:

> In the case of leased marketing premises owned by a franchisor, or in which a franchisor owns a leasehold interest, which premises are occupied by a dealer, the franchisor shall not sell, transfer, or assign to *another person* the franchisor's interest in the premises unless the franchisor has first either made a bona fide offer to sell, transfer, or assign to the dealer the franchisor's interest in the premises . . . or, if applicable, offered to the dealer a right of first refusal of any bona fide offer acceptable to the franchisor made by another person to acquire the franchisor's interest in the premises.

[8] Virginia Code § 1-230 defines "person" as a "corporation, partnership, association, cooperative, limited liability company, trust, joint venture, government, political subdivision, or any other legal or commercial entity and any successor, representative, agent, agency, or instrumentality thereof."

Furthermore, at all relevant times, Sunoco, Inc. (R&M) controlled Sunoco, LLC, either through its direct ownership of all Sunoco, LLC membership interests or through entities it controlled. [*Id.*].[9] In fact, at the time the transfers in question took place, Sunoco, Inc. (R&M) was the sole member of Sunoco, LLC. [Doc. No. 37, Ex. 11 ¶ 24]. The transfers at issue took place between two entities sharing a sufficiently close or common corporate identity as to be deemed the same "person" for the purposes of the VPPFA. The Court therefore concludes that Sunoco, Inc. (R&M), as a franchisor under the VPPFA, did not engage in a transfer to "another person" otherwise covered by the ROFR Amendment.

   c. *Sunoco, Inc. (R&M) lawfully conveyed its interest in the leased marketing premises by Contribution Agreement that preceded the effective date of the ROFR Amendment*

The last issue is whether the transfers at issue were made before or after the effective date of the ROFR Amendment—July 1, 2014.[10] The dispositive issue is whether the Contribution Agreement between Sunoco, Inc. (R&M) and Sunoco, LLC effectively transferred title under Virginia law. [Doc. No. 37-2].[11]

The Contribution Agreement states in pertinent part, the following:

> § 1: Sunoco R&M hereby grants, contributes, bargains, conveys, assigns, transfers, sets over and delivers to Sunoco, LLC and its successors and assigns, for its and their own use forever, all right, title and interest in [the applicable leased marketing premises].

---

[9] Sunoco, LLC appears as a wholly owned subsidiary of "ETP Retail Holdings, LLC," which itself appears to be a wholly owned subsidiary of Sunoco-related entities. [Doc. No. 36, Ex. D].

[10] The parties are in agreement that the ROFR has no retroactive effect. *See* [Doc. No. 37 at 12] ("It is undisputed that the ROFR Amendment became effective July 1, 2014. . . . The statute contains no language suggesting that it has any retroactive effect.").

[11] There was a second identical Contribution Agreement between Atlantic Refining & Marketing Corp. and Sunoco, LLC. [Doc. No. 37, Ex. 3]. Both were executed and delivered on the same day. However, plaintiffs have not named or otherwise joined Atlantic Refining & Marketing Corp., also a wholly owned subsidiary of Sunoco, Inc., as a party to this action.

§ 3: Sunoco R&M shall execute and record conveyance deeds covering each separate parcel of land that is part of the Real Property as soon as reasonably practical following the Effective Date.

§ 3: Notwithstanding the instruments identified above in this Section 3, to the extent permitted by applicable law, this Agreement shall also constitute a "deed," "bill of sale," "assignment" or such other instrument of transfer as required by applicable law of the Contributed Assets referenced herein.

[Doc. No. 37, Ex. 2]. Virginia law permits an agreement negotiated and executed between

parties to operate as a deed transferring title to real property. *See, e.g., Lim v. Choi*, 501 S.E.2d

141, 143–44 (Va. 1998). Assuming both parties memorialize their intent to transfer the property

by agreement, that "deed" becomes effective upon delivery. *See Capozzella v. Capozella*, 196

S.E.2d 67, 70 (Va. 1973). Here, the applicable transfer language in the Contribution Agreement

is unconditional, express, and absolute. Neither recordation of the Contribution Agreement nor

the execution and filing of a formal deed were required to pass title.[12] Here, the Contribution

Agreement was signed on May 30, 2014 and delivered to defendants' shared outside counsel that

same day to begin the preparation of closing binders. [Doc. No. 37, Ex. 11 ¶ 21]. Based on the

record, the Court concludes as a matter of law that "delivery" of the Contribution Agreement

occurred on May 30, 2014. *See, e.g., Leftwich v. Early*, 79 S.E 384, 387 (Va. 1913) ("the fact of

delivery is one of intention, which . . . must be manifested by some express act of the grantor, or

by acts, words, or conduct manifesting an intention to deliver").

Based on the foregoing, Sunoco, Inc. (R&M) effectively transferred title to their interests

in the leased marketing premises on the date they executed the Contribution Agreement, not on

the date of creation, execution, or recordation of the subsequently prepared and filed Quitclaim

deeds. Whatever the legal effect those Quitclaim deeds had, those instruments did not undo what

had already been affected through the Contribution Agreement. These facts, along with the

---

[12] Rather, recordation is the method adopted in Virginia to establish priority in a real property interest. *See* Va. Code Ann. § 55-96; *see also Blizzard v. Salyer*, 100 S.E. 454 (Va. 1919).

manifest intent of the parties memorialized in the Contribution Agreement, establish a lawful and complete transfer of the disputed property approximately one month before the ROFR Amendment's effective date.

For the above reasons, the Court concludes that the transfers at issue pre-dated the effective date of the ROFR Amendment. As a result, the ROFR Amendment's requirements cannot be imposed on either defendant and they are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, the Court finds and concludes that there are no genuine issues of material fact and defendants Sunoco, Inc. (R&M) and Sunoco, LLC are entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record. An appropriate Order will issue.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 20, 2015

10